PIERCE BAINBRIDGE BECK PRICE & HECHT LLP
JOHN M. PIERCE, ESQ. (SBN 250443)
john@piercebainbridge.com
600 Wilshire Boulevard, Suite 500
Los Angeles, California 90017 3212
(213) 262-9333

KAUFHOLD GASKIN LLP
STEVEN S. KAUFHOLD, ESQ. (SBN 157195)
Email: SKaufhold@KaufholdGaskin.com
JONATHAN B. GASKIN, ESQ. (SBN 203625)
Email: JGaskin@KaufholdGaskin.com
388 Market St., Suite 1300
San Francisco, CA 94111
Telephone: 415-445-4620
Facsimile: 415-874-1071

Attorneys for Plaintiff-Relator
CARL KRAWITT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. CARL KRAWITT, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> INFOSYS TECHNOLOGIES LIMITED, INCORPORATED and APPLE INCORPORATED, <br><br> Defendants. | Case No.: 5:16-CV-04141-LHK <br><br> FIRST AMENDED COMPLAINT; JURY TRIAL DEMANDED <br><br> Hon. Lucy H. Koh |

Plaintiff United States of America ("United States"), by and through Relator Carl Krawitt, alleges the following:

## INTRODUCTION

1.   Defendant Infosys Technologies Limited, Incorporated ("Infosys") is a knowing and intentional recidivist violator of the immigration laws of the United States, more concerned with its own profitability and its efforts to offer low labor costs to its corporate clients, such as Defendant Apple Inc., than it is with complying with applicable law.  In 2013, Infosys paid $34 million to the United States and in 2017 it paid $1 million to the State of New York for the settlement of claims relating to the exact kind of behavior that is at issue in the action.  The facts set forth herein demonstrate that instead of complying with its own publicly-stated zero tolerance for violation after the prior enforcement actions – and resulting seven-figure payments – Infosys has continued to prioritize its own profits over compliance with applicable law.

2.   Defendant Apple, Inc. ("Apple") uses the visa provisions of the immigration laws to import foreign workers into the United States in its own name at below-market salaries in order to cut costs. It also knowingly and intentionally violates the immigration laws of the United States through its dealings with Infosys and other providers of outsourced technology workers.

3.   Specifically, Infosys and Apple  (collectively, "Defendants") made false statements and defrauded the federal government relating to Indian foreign nationals hired by them. Defendants falsely claimed Indian foreign nationals they hired were qualified for "B-1" immigration visas notwithstanding the fact that they performed work in the United States, which would have required them to obtain H1-B visas. Defendants falsely claimed that Indian foreign nationals traveling to the United States with B-1 visas were not being paid for work, when in fact they were. Additionally, they had the Indian foreign nationals perform work that could have been performed by United States citizens.  Had this work been performed lawfully by United States citizens, the result would have been higher wages and increased tax revenue for the United States, not India.

4.   Infosys and Apple systematically created fraudulent letters and false descriptions of the work performed in the United States and brought in Indian foreign nationals to perform this

1    work, in the absence of legitimate and legal purposes.  Infosys and Apple carefully hid this
2    information and their scheme from the United States Government.  The result of this unlawful
3    scheme is that Infosys and Apple were able to achieve all of the following: (a) avoid express
4    Congressional limits on the number of H1-B visas to be issued because there is no limit on B-1
5    visas; (b) avoid paying for more expensive H1-B visas and pay instead a fraction of that price for
6    less expensive B-1 visas; and (3) avoid paying foreign workers – from India and elsewhere – the
7    mandatory minimum salaries required for H1-B visa holders and instead pay them significantly
8    lower salaries set in the native Countries as is permissible for B-1 visa holders.  Evidence will
9    show multiple examples of willful attempts to abuse the B-1 and H1-B visa on United States soil.
10   In short, Apple and Infosys cheated both the United States government and the workers they
11   employed.

## BACKGROUND AND OVERVIEW OF THE SCHEME

12       5.   Infosys is a corporation specializing in information technology consulting, training, and
13   outsourcing services, located in thirty countries, including the United States, with locations
14   in seventeen cities in the United States. Infosys brings foreign nationals into the United States
15   and provides such resources to American clients from outsourcing centers in India on Hl-B, B-1,
16   L-1, and L-2 visas. The unlawful provision of foreign nationals on B-1 visas to work in the
17   United States allows Infosys to offer services at significantly reduced prices compared to
18   industry competitors, thereby creating considerable demand for Infosys's services in the
19   information technology sector. Some of Infosys's clients include Oracle Corporation, Intel, SAP,
20   Gap Inc., Riverbed, Wells Fargo, and as discussed in more detail below, Apple.

21       6.   Infosys is a repeat offender. On October 30, 2013, in the Eastern District of
22   Texas, the United States filed a Qui Tam False Claim Act Complaint ("2013 Complaint") against
23   Infosys. The 2013 Complaint sought to recover penalties and damages arising from false records
24   and statements made and used by Infosys to avoid its obligation to pay money to the United
25   States, including but not limited to: delivering false and fraudulent documents to the United
26   States to secure illegal visas for its employees to come to the United States; sending foreign
27   national employees to work in the United States on B-1 visas to avoid the restrictions placed by

the United States on the H-1B visas, and to avoid paying the higher fees required to obtain H-1B visas; employing foreign nationals in full time jobs at client sites in the United States on B-1 visas, and not paying to the United States Social Security and Medicare taxes; issuing "dummy" social security numbers to H-1B visa employees, thus avoiding Social Security and Medicare taxes; failing to document employees working in the United States; falsely attesting that employees were authorized to work in the United States; and altering and destroying 1-9 Employee Eligibility Verification Forms to avoid paying fines and penalties to the United States. The United States Attorney's Office for the Eastern District of Texas summarized Infosys's actions as follows: "Infosys used B-1 visa holders to perform jobs that involved skill labor that were instead required to be performed by United States citizens or required legitimate H-1B visa holders."

7.    On October 30, 2013, Infosys entered into a $34,000,000 settlement agreement ("Settlement Agreement") with the United States in the Eastern District of Texas to resolve the allegations in the Complaint. As part of the Settlement Agreement, Infosys agreed to pay $5,000,000 to Homeland Security Investigations for civil or administrative forfeiture, $5,000,000 to the Department of State for civil or administrative forfeiture, and $24,000,000 to the United States Attorney's Office for the Eastern District of Texas. The United States agreed to file a motion to dismiss the 2013 Complaint with prejudice upon receipt of full payment from Infosys. Aside from payment of the $34,000,000, Infosys further agreed: not to use non-specific invitation letters absent express written agreement from the US Department of State; to retain a detailed description of activities by each B-1 visa applicant at the time of entry into the United States for a period of three years, and to provide that description to the United States upon request; to allow the United States to use any materials it obtained during its investigation of Infosys, in redacted form, by State and/or Department of Homeland Security for training aids and various outreach activities to industry members; to retain, at its own expense, an independent third-party auditor or auditing firm to review and report on its 1-9 Employee Eligibility Verification Form compliance; that the independent third-party auditor shall analyze a random sample of not less than four percent of Infosys's existing United States workforce to determine if

the I-9 forms associated with the workforce have been completed and maintained in full compliance with 8 U.S.C. § 1324a; that the independent third-party auditor must submit a signed report to the United States Attorney for the Eastern District of Texas regarding results of the analysis within 60 days of the first and second anniversaries of signing the settlement agreement; to submit a report to the United States Attorney for the Eastern District of Texas within 60 days of the first anniversary of the settlement agreement describing whether Infosys's B-1 visa use policies, standards of conduct, internal controls, and disciplinary procedures have been effective in ensuring compliance with the terms of the settlement agreement; that the United States will review random samples of documents that Infosys has submitted to U.S. Consular officials and other immigration officials in support of its B-1 visa holders to determine compliance with the settlement agreement. Finally, Infosys agreed: it had committed civil violations of 8 U.S.C. §1324a(a)(l)(B); it would cease and desist from any further violations of 8 U.S.C. § 1324a; that the violations would be considered "previous violations" pursuant to 8 U.S.C. § 1324a(e)(5); and, that any future violations of 8 U.S.C. § 1324a(a)(l)(B) could be subject to enhanced penalties.  David Maxwell, Special Agent in Charge of Homeland Security Investigations in Dallas summarized the investigation of Infosys conduct. "The investigation indicated that Infosys manipulated the visa process and circumvented the requirements, limitations, and governmental oversight of the visa programs.  The investigation also showed that more than 80 percent of Infosys's I-9 forms for 2010 and 2011 contained substantive violations.  Ultimately, these actions by Infosys cost American jobs and simultaneously financially hurt companies that sought to follow the laws of this nation."

   8. *The New York Times* reported at the time that the payment made by Infosys, "is the largest ever in a visa case," and explained, "[t]he business visitor visa, which is known as B-1, has lower fees, is quicker to obtain and is not subject to the same numerical caps.  But the B-1 visa is for foreigners coming to meetings and training sessions.  It does not allow them to live or work in the United States.  The workers continue to be paid at wage rates in India, which are much lower than wages in this country."

   9.  "Infosys regularly misinformed immigration officials about where Indian workers on B-1

visas would travel in this country, to avoid a more onerous requirement of the H-1B visa that the company demonstrate that it was not undercutting prevailing wages paid to Americans in places where Indians would be assigned, the documents showed.  Infosys also rewrote some contracts with American companies to conceal the fact that it was using B-1 visa holders to perform jobs that were 'otherwise required to be performed by United States citizens or legitimate H-1B visa holders,' according to the documents," reported *The New York Times*.

10. Incredibly, the record-breaking financial settlement with the United States did not deter Infosys from continuing to abuse and manipulate the B-1 visa program. Since 2013, Infosys continued to unlawfully send Indian foreign nationals to work in the United States on B-1 visas, and it has conspired with Apple to do so. Evidence will show multiple willful attempts to abuse the B-1 and H1-B visa on United States soil.  This scheme, in which Indian foreign nationals with B-1 visas were used in jobs in the United States, violates U.S. immigration laws. As both Infosys and Apple both know, the B-1 visa is intended only for business activities that are a necessary incident to other business abroad. The B-1 visa allows for foreign nationals to engage in activities such as attending meetings, consulting with associates, engaging in negotiations, taking orders for goods produced and located outside the United States, attending conferences, and researching options for opening a business in the United States (such as locating or entering into a lease for office space). B-1 visa holders may not engage in any activity or perform a service that would constitute local employment for hire within the United States. Notwithstanding its knowledge of these limitations, and its own settlement with the United States government for previous similar violations of U.S. immigration laws, Infosys continued to abuse the visa process and, in at least one circumstance, found a willing partner in Apple.

11. Indeed, lnfosys's refusal to hire United States citizens due to the higher costs associated with this labor, and employing instead Indian foreign nationals at a discount, furthered its corrupt scheme.  This is exactly the behavior and motivation that the Department of Justice had found and that *The New York Times* had previously reported, "[t]he prosecutors charge that Infosys regularly submitted the false information about its B-1 visas 'for the purposes of increasing

profits' by minimizing costs and gaining greater flexibility in moving Indian workers around the country."

12. One example that is illustrative of broader unlawful conduct by Infosys and Apple occurred within the Northern District and began on or about August 20, 2014, when Infosys entered into a proposal to provide consulting and training services to Apple. The proposal's project plan stated Infosys would provide instructors and classroom training to Apple employees from Apple's Online Store Engineering Organization regarding, *inter alia,* the organization's structure, team dynamics, and software development processes. Infosys and Apple eventually entered into a $50,000 contract, or Statement of Work ("SOW"), titled "Agile Framework Definition Program" ("Agile Contract") whereby Infosys was to deliver sixteen classroom training sessions to Apple's Online Store Engineering Organization from September 15, 2014, to October 31, 2014, at Apple locations in Cupertino, California, and Sunnyvale, California.

13. During negotiations of the Agile Contract, Infosys Managers and Senior Leaders Ashutosh Sharma ("Sharma"), Steve Seo ("Seo"), Jeff Kavanaugh ("Kavanaugh") and Razab Chowdury ("Chowdury") knew Infosys lacked sufficient foreign nationals on Hl-B visas to legally perform the classroom training sessions at Apple. Sharma, Seo, Kavanaugh and Chowdury knew that only Indian foreign national workers on B-1 visas were available to perform services under the Agile Contract. Accordingly, on or about August 31, 2014, Infosys, through Sharma, and Apple, through Apple Senior Manager, Marcus Delano East ("East"), conspired to have Indian foreign nationals come unlawfully to the United States, on B-1 visas, to conduct the training sessions under the Agile Contract.

14. On September 4, 2014, the Agile Contract was signed and reviewed collectively by Infosys Managers and Senior Leaders Sharma, Seo, Kavanaugh and Chowdury, as well as Apple Senior Manager East. The Agile Contract contained a standard Non-Disclosure Agreement ("NDA") under Apple's previous Master Services Agreement ("MSA") between Apple and Infosys. The contracted services pursuant to the Agile Contract totaled more than $100 Million in 2014.

15. On September 10, 2014, Relator Krawitt began work at Apple as an independent contractor for Infosys under the Agile Contract. Relator Krawitt reviewed the curriculum and materials created by Infosys in India and edited in the United States for the Agile Contract, and observed that Infosys's proposed trainers/instructors, Sreekumar Vobugarihad ("Vobugarihad") and Vijay Bheemarao Dani ("Dani"), Indian foreign nationals with prior B-1 visas, did not have the proper visas from the United States to complete the work to be performed. Relator Krawitt warned fellow Infosys employees and superiors that the Agile Contract was at risk because Vobugarihad and Dani lacked the requisite H-lB visas to legally conduct the training courses at Apple. Nevertheless, Apple Senior Manager East approved Infosys's training curriculum and seminar for Apple Employees. At the time East approved the training curriculum and seminar, he was fully aware that Vobugarihad and Dani, B-1 visa holders, would be the trainers under the Agile Contract.  Additionally, Apple Senior Manager East took the extra step of approval of the materials, for Infosys's training curriculum as a milestone.  He insisted that the material be contextualized for Apple and would remain the intellectual property of Apple.  In sum, both Infosys and Apple knew that these actions violated applicable laws of the United States and they proceeded regardless in order to save money and for their own convenience.

16. On September 15, 2014, Relator Krawitt drafted the initial project memorandum for the Agile Contract, which was later finalized and presented in person by Infosys employees Sharma, Seo, and Chowdury to Apple Senior Manager East and Apple Project Manager Tricia Buenbrazo-Sarnuels ("Buenbrazo-Sarnuels"). The project memorandum discussed, *inter alia,* the qualifications of the trainers/instructors, and included their *curriculum vitae,* thereby further informing East, Buenbrazo-Sarnuels, and Ceava Potter ("Potter"), the Apple Project Administrator for the Agile Contract, that Infosys intended on bringing Indian foreign nationals Vobugarihad and Dani to Apple on B-1 visas as trainers/instructors under the Agile Contract.

17. On September 24, 2014, at the request of lnfosys employees Sharma, Chowdury and Kishore Raghavendra Kamath ("Kamath"), Apple Senior Manager East provided Infosys draft letters from Apple to be used by Vobugarihad and Dani, for the purpose of entry into the United States on their previously issued B-1 visas. The B-1 visa letters drafted by East withheld the fact

that Vobugarihad and Dani would serve as instructors/trainers under the Agile Contract, misrepresented that Vobugarihad and Dani would merely attend meetings at Apple from September 30, 2014, to October 24, 2014, and falsely stated that Vobugarihad and Dani would not be paid, when in fact Vobugarihad and Dani received compensation in the form of continued salary benefits, and Infosys was to receive $50,000 under the Agile Contract as compensation for Vobugarihad and Dani's work. Infosys employees Sharma, Chowdury and Kamath approved the B-1 visa letters, and returned them to Apple employees Buenbrazo Samuels and Potter for approval. Kamath finalized the letters on company letterhead, and Apple Senior Manager East signed them. Again, both Infosys and Apple knew that the letters contained false statements and material omissions to the United States and, again, both companies proceeded to violate applicable law in order to save money and to serve their own convenience and business priorities.

18. Upon learning the content of the B-1 visa letters for the first time, as well as this scheme between Infosys and Apple, on September 25, 2014, Relator Krawitt brought this issue to the attention of lnfosys employee Seo, Relator Krawitt's supervisor. He documented the visa issue as a risk to the project repeatedly in written project status updates which were reviewed by Apple and Senior Management at Infosys. Seo declined to discuss this issue with Relator Krawitt. Thereafter, on or about October 6, 2014, Relator Krawitt notified Infosys employee Chowdury that Infosys was in violation of United States immigration laws, and that this matter should be referred to Infosys's Legal Department for further inquiry. Chowdury agreed to refer the matter. However, he instead sent an e-mail warning to Infosys executives Sharma, Seo and Graham Passey ("Passey"), that Relator Krawitt had raised the issue, and that it would be a potential problem. Chowdury took this more limited action only after Relator Krawitt threatened not to work unless the issue was escalated.

19. On October 8, 2014, Infosys employee Sharma acknowledged Infosys's participation in the scheme, when he stated in an e-mail to Seo, Chowdury and others, that Vobugarihad and Dani needed to travel back to India, and then return to the United States in order to avoid

detection and suspicion for violating United States immigration laws. This is the same type of subterfuge that Infosys had previously employed in its attempts to hide its earlier legal violations from the United States government.

20. On October 9, 2014, Relator Krawitt and Infosys employee Chowdhury discussed the prior False Claims Act case against Infosys in the Eastern District of Texas. Chowdhury stated the prior case brought extra scrutiny and pressure on him, and Infosys, to avoid detection for flaunting United States immigration laws. In a conversation, Chowdhury further revealed to Relator Krawitt that if Chowdhury "got caught" for manipulating immigration visas on behalf of Infosys, Chowdhury would "pretend as if he knew nothing."

21. That same day, Relator Krawitt spoke with an Infosys senior manager who confirmed Relator Krawitt's suspicions about Infosys's immigration visa violations. The manager recommended that Relator Krawitt "not say anything" about the violations, otherwise Relator Krawitt might suffer retaliation from Infosys, and potentially lose his job there. This Infosys manager further suggested that Relator Krawitt retain an attorney in the event Infosys retaliated against Relator Krawitt for his whistleblowing.

22. As Relator Krawitt whistle blew on the immigration visa scheme to his superiors at Infosys, the Agile Contract training sessions at Apple proceeded as scheduled. Apple Senior Manager East, and others, as before, insisted and required that only Apple employees be eligible and participate in the training sessions. Meanwhile, Apple Senior Manager East, and others, continued to appreciate that Indian foreign nationals Vobugarihad and Dani served as trainers under the Agile Contract. Vobugarihad and Dani received mostly positive written reviews from Apple employees who participated in the training.

23. Nevertheless, on October 16, 2014, Apple Senior Manager East communicated to Infosys his dissatisfaction with Vobugarihad and Dani's training sessions, as well as his dissatisfaction with their training performance. As a result, East demanded that Infosys provide new trainers/instructors, but this time from the United States. At Apple's request, Infosys sent back Vobugarihad and Dani to India, and the remaining classes under the Agile Contract were

cancelled. Apple employees Buenbrazo-Samuels, and East's superior, Max Mancini ("Mancini"), were aware of East's position, as well as this change in circumstance regarding the training.

24. With additional training yet to be completed, on October 26, 2014, Apple Project Manager Buenbrazo-Samuels provided a second, albeit different, Statement of Work ("SOW") to Infosys employee Sharma to reflect the further training to be provided by Infosys. In the second SOW, Apple Senior Manager East and Project Manager Buenbrazo-Samuels conspired with Sharma to purposefully omit "training" from its terms.

25. On October 27, 2014, a trainer from the United States was brought in on the second SOW, at a total cost of $250,000, to deliver the remaining training sessions to Apple employees, despite the omission of the term "training" from the second SOW. Relator Krawitt continued working for Infosys at Apple under the second SOW in the same capacity as before because Infosys lacked the requisite resources in the United States.

26. In or around January 2015, Infosys declined to extend Relator Krawitt's employment as retaliation against him for whistleblowing on the B-1 visa scheme. As a result, Infosys employees Sharma, Seo, Chowdury, and others, purposefully avoided communications on the B-1 visa scheme based on Relator Krawitt's whistleblowing. Also, in or around January 2015, Infosys began discussing severance with Relator Krawitt to placate Relator Krawitt regarding his prior whistleblowing of the B-1 visa scheme.

27. In or around February 2015, while still employed at Infosys and negotiating his severance, Relator Krawitt discovered that Infosys employees Seo and Chowdury used protected work-product from the Agile Contract on a project for another Infosys client, had misappropriated other Apple work-product, and rebranded it as Infosys work-product in violation of the terms of the NDA under both the Agile Framework Contract and Apple MSA. After Relator Krawitt notified Apple Senior Manager East of Infosys's theft of Apple work-product, East and Buenbrazo Samuels contacted Chowdury demanding immediate cessation of Infosys's violations.  To be clear, Apple placed a much higher priority on Infosys's compliance with Apple agreements than on its own compliance – or that of Infosys – with the immigration laws of the United States.

28. In or around February 2015, Relator Krawitt concluded his employment at Infosys.

29. In or around March 2015, Relator Krawitt began working at Apple as a contractor under the supervision of East and Mancini, as part of the Retail Online Store Engineering Management Team. Relator Krawitt's first employment period lasted from March 2015 through October 2015. Relator Krawitt provided the same or similar training and consulting services he previously delivered to Apple with Infosys.

30. In or around October 2015, Relator Krawitt attended an Apple team meeting with Apple Senior Manager East and others. During the meeting, East urged the Retail Online Store Engineering Management Team to "pressure" outside vendors with employees on temporary worker visas in the United States to require that those employees work for free until Apple management approved new contracts for them. Relator Krawitt questioned East about the legality of this practice.

31. On October 26, 2015, Relator Krawitt's work as an independent contractor with Apple was not renewed.

32. On belief and information, Apple eventually conducted an internal investigation into the actions and public statements of East, including his misuse of B-1 visas, and his insistence on pressuring outside vendors regarding certain employees' work statuses, and discovered his wrongdoing.  East, a green card holder, ended his employee status and returned to London.  This termination was not based on East's participation in violation of the immigration laws but rather on his public statements which brought scrutiny to Apple's practices.

33. In or around January 2016, Relator Krawitt was contacted regarding another employment position at Apple but was not rehired.

## PARTIES

34. Relator Carl Krawitt is over the age of nineteen and is a resident citizen of the State of California. At all material times, Relator Krawitt was employed by Infosys as a consultant and later at Apple as a contractor.

35. Infosys, Inc. is a corporation based in Bangalore, India, with approximately 160,000 world-wide employees, licensed and doing business in the United States. Infosys has a place of

1    business located at 4009 Miranda Avenue, #100, Palo Alto, CA 94304.

2    36. Ashutosh Sharma is or was an employee of Infosys. Sharma serves or served as a client

3    services manager for Sales/Business Development and Project Administration. Sharma reported

4    to his employer regarding Infosys's relationship with Apple manager East. Sharma was also the

5    primary individual orchestrating the staffing project at Infosys as well as the improper use of B-1

6    visa holders from India. On information and belief, Sharma instructed B-1 visa holders and his

7    team how to answer questions about the legal status of foreign nationals. Krawitt inquired

8    multiple times for proof of legal review by Infosys and each time Sharma claimed that the legal

9    department reviewed all contracts, including visa applications, on the assumption that Apple was

10    not under any risk for its complicity in the scheme.

11    37. Razab Chowdury is or was an employee of Infosys. He serves or served as a Senior

12    Principal for Infosys's Management Consulting Services. Chowdury was Relator Krawitt's

13    direct supervisor for the client engagement project, and was the project manager responsible for

14    the overall delivery of the project. On information and belief, Chowdury willfully omitted

15    Relator Krawitt from Chowdury's email communications with Infosys superiors Ashutosh

16    Sharma, Steve Seo and Graham Passey regarding the illegal use of B-1 visas. Chowdury only

17    revealed those email communications to Relator Krawitt after Relator Krawitt threatened to stop

18    working if he failed to do so.

19    38. Sreekumar Vobugarihad is or was an employee of Infosys. Vobugarihad is or was a

20    principal specializing in training, education and research for Infosys based in India. Vobugarihad

21    entered the United States on a previously obtained B-1 visa, accompanied by a work

22    authorization letter from Apple's Marcus Delano East.

23    39. Vijay Bheemarao Dani is or was an employee of lnfosys. Dani is or was a principal

24    specializing in training, education and research for Infosys based in India. Dani entered the

25    United States on a previously obtained B-1 visa, accompanied by a work authorization letter

26    from Apple's Marcus Delano East.

27    40. Steve Seo is or was an employee of lnfosys. He serves or served as an Associate

28    Partner for Infosys's Management Consulting Services, and as direct supervisor to Razab

1    Chowdury as well as Relator Krawitt. Seo was responsible for multiple projects at lnfosys's

2    client Apple, including the Agile Contract. Relator Krawitt corresponded with, and spoke

3    directly to Seo, regarding Relator Krawitt's concerns that Infosys was continuing to improperly

4    use workers in the United States on B-1 visas. Following Relator Krawitt's whistleblowing of

5    the B-1 visa scheme, Seo wrote and submitted Relator Krawitt's performance evaluation to

6    Infosys's Human Resources Department, recommending that Relator Krawitt be placed on a

7    Performance Improvement Plan as retaliation for Relator Krawitt's whistleblowing.

8        41. Graham Passey is or was an employee of lnfosys. He serves or served as an Associate

9    Partner for Infosys's Management Consulting Services. Passey was responsible for multiple

10   projects at Infosys's client, Apple, including the Agile Contract. Relator Krawitt corresponded

11   and spoke directly to Passey regarding Relator Krawitt's concerns that Infosys was continuing to

12   improperly use workers here in the United States on B-1 visas. Relator Krawitt previously

13   communicated concerns to Passey regarding Infosys's misuse of visas at Infosys's previous client

14   "Riverbed."  Evidence will show that Infosys systematically ignored the administrative process

15   when filing letters for the visa-holders that were working at Riverbed.  Krawitt confirmed that

16   workers at Riverbed held L1 visas instead of the requisite H1-B, and that these workers had

17   notice pursuant to on-site audits by ICE/State Dept. at Riverbed.

18       42. Jeff Kavanaugh is or was an employee of lnfosys. He serves or served as a Managing

19   Partner and Senior Vice President of lnfosys's Manufacturing and Technology Practice Division.

20   Kavanaugh supervised Seo and Passey, and reviewed weekly reports and other communications

21   which demonstrated Infosys's improper use of workers in the United States on B-1 visas.

22       43. Kishore Raghavendra Kamath is or was an employee of Infosys. Kamath serves or

23   served as a client services manager, and worked directly under Ashutosh Sharma. Kamath

24   worked in the United States on Hl-B visa on the administration of engineering services, which

25   included onboarding and information technology support. Kamath forwarded the B-1 visa letters

26   from Infosys to Apple employee Tricia Buenbrazo-Samuels and Ceava Potter for approval and

27   Marcus Delano East's signature.

28       44. Apple, Inc. is a corporation based in the United States, with over 100,000 employees.

Apple's principal place of business located at 1 Infinite Loop, Cupertino, California 95014.

45. Marcus Delano East was an employee of Apple. East served as a Senior Manager for Engineering Project Management Office (PMO) for the Apple Online Store. East managed the budget and operations of AOS Engineering, including personnel, contractor, vendor relations, signed contracts, and B-1 visa letters. On information and belief, East also had operational management of a budget of more than $100 million dollars with management of contracts for more than 300 visa holders from a variety of companies in addition to Infosys, including a majority of Hl-B visas, with some L-1 and L-2 visa holders. East orchestrated and oversaw numerous violations of the immigration laws of the United States by Apple.

46. Tricia Buenbrazo-Samuels is or was an employee of Apple, and serves or served as a PMO Project Manager. As a manager for Apple, Buenbrazo-Samuels was aware of, supervised, and actively participated in the scheme between Infosys and Apple to improperly utilize B-1 visitor visa holders.

47. Max Mancini is or was an employee of Apple in the Engineering Organization, and serves or served as AOS Engineering. As an executive who reported to Apple's CFO and to Executive Level Finance Departments, Mancini was aware of, supervised, and actively participated in the scheme between Infosys and Apple to improperly utilize B-1 visitor visa holders.

48. Ceava Potter is or was an employee of Apple. She serves or served as a project administrator and provided logistical support for training related activities, including facilitation of the B-1 letters, and obtaining signatures of the B-1 letters for East. Potter previously was employed by East outside the United States, and is a L-2 visa holder.

## JURISDICTION AND VENUE

49. This action arises under the False Claims Act, 31 U.S.C. § 3729 *et seq.,* creating subject matter jurisdiction pursuant to 31 U.S.C. § 3732(a). The Court has personal jurisdiction over Infosys and Apple because both companies transact business in the Northern District of

1    California. Additionally, Apple's principal place of business is in the Northern District of

2    California.

3        50. Venue is proper in the Northern District of California pursuant to 31 U.S.C. §3732(a) as,

4    *inter alia:* (i) Infosys and Apple transact business in the Northern District of California and did

5    so at all times relevant to this Complaint; (ii) The principal places of business for Apple is also in

6    the Northern District of California; (iii) Infosys employed Relator Krawitt in the Northern

7    District of California to work at Apple; and (iv) Infosys and Apple committed violations of

8    United States law within the Northern District of California. Venue also is proper in the Northern

9    District of California, because a substantial part of the events or omissions giving rise to these

10   claims occurred in the Northern District of California.

11       51. Upon the filing this amended complaint, Relator Krawitt will provide a copy of this

12   amended complaint, together with a written disclosure of all material evidence and information

13   Relator Krawitt possesses, to the Government, pursuant to the requirements of 31 U.S.C. §

14   3730(b)(2). Relator Krawitt complied with all other conditions precedent to bringing this action.

15   Relator Krawitt is the original source of, and has direct and independent knowledge of, all

16   publicly-disclosed information on which any allegations herein might be deemed based and has

17   voluntarily provided such information to the United States before filing this action.

                                   **CAUSES OF ACTION**

19       52.        Infosys provides information technology and consulting services worldwide,

20   including within the United States. Infosys employs over 15,000 foreign nationals in the United

21   States, most of whom are working in the United States on H-1B, L-1, and L-2 visas, with some

22   foreign nationals on B-1 visas. Pursuant to 8 U.S.C.A. § 1 IOI(a)(l5)(H)(i)(b), the H-1B visa

23   category applies to people who perform services in a specialty occupation and the employee

24   must meet certain criteria to qualify. Pursuant to 8 U.S.C.A. § 1101(a)(l5)(B), the B-1 visa

25   category applies to temporary business visitors who come to the United States. The B-1 visa

26   category only allows foreign nationals to conduct activities of a commercial or professional

27   nature, such as, consulting with business associates, negotiating a contract, or attending business

28   conferences. Individuals on B-1 visas are prohibited, by law, from working in jobs in the United

States. Through the years, and from 2013 to the present, Infosys has applied for, and obtained, B-1 visas for its employees to come to the United States by falsely representing to the United States that the employees were coming for meetings or other legitimate B-1 purposes, but instead employing the B-1 visa holders in jobs at client sites in direct violation of immigration law.

53. Apple is a multinational technology company, based in the United States, specializing in the design, development and sale of consumer electronics, computer software and online services. Apple also employs foreign nationals under the Hl-B visa program. Apple is well aware of the criteria to qualify for a Hl-B visa, and the fact that individuals on B-1 visas are prohibited, by law, from working in jobs in the United States and prohibited from providing services for compensation by clients.  Notwithstanding this knowledge, Apple has knowingly and intentionally made false statements to the United States government in order save money by having work performed for it in the United States by individuals on B-1 visas in direct violation of immigration law.

54. During the course of his employment, Relator Krawitt personally observed and reviewed Infosys documents showing that Infosys was sending Indian foreign nationals to the United States under B-1 visas to work under contract client projects in paid positions at Apple, an Infosys customer site, in direct violation of United States immigration law.

55. Infosys continues to employ workers with no documentation, or clearly fabricated documentation. This is done with the full knowledge of Infosys employees, including supervisors, lnfosys's general counsel, Immigration Team and Human Resources Department. Infosys's scheme of sending employees to the United States to work in jobs on client sites on B-1 visas benefits Infosys because the workers are paid substantially less than American workers and/or H-1B employees. Under this scheme, Infosys avoids paying the United States the substantially higher application fee for H-1B visas, and avoids paying Social Security, Medicare and other fees and taxes to the United States. Apple willingly participated in lnfosys's scheme by contracting with Infosys for workers on B-1 visas instead of hiring United States citizens and/or green card holders as full-time employees at market rate compensation. Apple did so as a cost-savings measure.

**FIRST CAUSE OF ACTION**

**VIOLATIONS OF THE FALSE CLAIMS ACT AGAINST ALL DEFENDANTS**

56. Relator Krawitt incorporates herein by reference and re-alleges the allegations stated in Paragraphs 1 through 55, inclusive of this Complaint.

57. Defendants Infosys and Apple, by and through its officers, agents, and employees knowingly made, used, or caused to be made or used, false records and/or statements material to its obligation to pay or transmit money to the United States and/or knowingly concealed, avoided or decreased its obligations to pay or transmit money or property to the United States.

58. Defendants Infosys and Apple, by and through its officers, agents, and employees authorized and ratified all the violations of the False Claims Act committed by its various officers, agents and employees.

59. The United States, American workers and the public have been damaged as a result of Defendants Infosys and Apple's violations of the False Claims Act.

**PRAYER FOR RELIEF**

WHEREFORE, Relator Krawitt, on behalf of himself and the United States, prays:

(i)  that this Court enter a judgment against Defendants in an amount equal to three times the amount of damages the United States sustained as a result of Defendant's violations of the False Claims Act;

(ii)  that this Court enter a judgment against Defendants for a civil penalty of $10,000 for each of Defendant's violations of the False Claims Act;

(iii) that Relator Krawitt recover costs, expenses and all reasonable attorney's fees in bringing this action;

(iv) that this Court award Relator Krawitt pre- and post- judgment interest; and

(v) that this Court award Relator Krawitt such other and further relief as the Court deems just and proper.

Further, Relator Krawitt, on his own behalf, requests that he receive such a maximum amount as permitted by law, of the proceeds of this action or settlement of this action collected by the United States, plus an amount for reasonable expenses incurred, plus reasonable attorney's fees

and costs of this action. Relator Krawitt requests that his percentage be based upon the total value recovered, including any amounts received from individuals or entities not parties to this action.

Dated: April 16, 2018                    PIERCE BAINBRIDGE BECK PRICE & HECHT LLP

                                         By: _John M. Pierce_
                                         John M. Pierce (SBN 250443)
                                         john@piercebainbridge.com
                                         Pierce Bainbridge Beck Price & Hecht LLP
                                         600 Wilshire Boulevard, Suite 500
                                         Los Angeles, California 90017 3212
                                         (213) 262-9333

                                         Steven S. Kaufhold (SBN 157195)
                                         skaufhold@kaufholdgaskin.com
                                         KAUFHOLD GASKIN LLP
                                         388 Market Street, Suite 1300
                                         San Francisco, CA 94111
                                         Telephone: (415) 445-4621
                                         Facsimile: (415) 874-1071

                                         *Counsel for Plaintiff*
                                         CARL KRAWITT

1

## DEMAND FOR JURY TRIAL

2

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff Carl Krawitt hereby

3

demands a trial by jury in this action of all issues so triable.

4

5

Dated: April 16, 2018                    PIERCE BAINBRIDGE BECK PRICE & HECHT LLP

6

7                                          By:

John M. Pierce (SBN 250443)
8                                          john@piercebainbridge.com
                                           Pierce Bainbridge Beck Price & Hecht LLP
9                                          600 Wilshire Boulevard, Suite 500
                                           Los Angeles, California 90017 3212
10                                         (213) 262-9333

11                                         Steven S. Kaufhold (SBN 157195)
                                           skaufhold@kaufholdgaskin.com
12                                         KAUFHOLD GASKIN LLP
                                           388 Market Street, Suite 1300
13                                         San Francisco, CA 94111
                                           Telephone: (415) 445-4621
14                                         Facsimile: (415) 874-1071

15

16                                         *Counsel for Plaintiff*
                                           CARL KRAWITT
17

18

19

20

21

22

23

24

25

26

27

28