UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. CARL KRAWITT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>INFOSYS TECHNOLOGIES LIMITED, INCORPORATED and APPLE INCORPORATED,<br><br>Defendants. | Case No. 16-CV-04141-LHK<br><br>**ORDER GRANTING APPLE INC.'S MOTION TO DISMISS AND DENYING INFOSYS TECHNOLOGIES, LTD.'S MOTION TO DISMISS AS MOOT**<br><br>Re: Dkt. Nos. 55, 56 |

*Qui Tam* Plaintiff Carl Krawitt ("Krawitt") brings suit against Defendants Infosys Technologies, Ltd. ("Infosys") and Apple Inc. ("Apple") (collectively, "Defendants") under the False Claims Act. The suit alleges that the Defendants conspired to have two Indian nationals enter the United States on a business B-1 visa to provide training at Apple in violation of immigration law. Krawitt instead insists that the two trainers ought to have obtained the more expensive and numerically-capped H1-B visas before entering the United States. Defendants have filed separate motions to dismiss. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS Apple's motion to dismiss, and DENIES Infosys'

1

Case No. 16-CV-04141-LHK
ORDER GRANTING APPLE INC.'S MOTION TO DISMISS AND DENYING INFOSYS TECHNOLOGIES, LTD.'S MOTION TO DISMISS AS MOOT

motion to dismiss as moot.

## I. BACKGROUND

### A. Factual Background

Infosys, based in India, is a corporation "specializing in information technology consulting, training, and outsourcing services . . . ." ECF 37 at ¶ 5 ("FAC"). One of Infosys' clients is Apple. *Id.* Infosys and Apple entered into a $50,000 contract (the "Agile Contract") for Infosys to provide Apple's Online Store Engineering Organization with 16 live training sessions in California. *Id.* at ¶ 12. It is alleged that during negotiations over the Agile Contract with Apple, Infosys executives "knew Infosys lacked sufficient foreign nationals on H1-B visas to legally perform the classroom training sessions at Apple." *Id.* at 13. The FAC further alleges that "only Indian foreign national workers on B-1 visas were available to perform services under the Agile Contract." *Id.* In particular, 2 Indian nationals holding B-1 visas were scheduled to be the trainers under the Agile Contract.[1] *Id.* at ¶ 15.

On September 10, 2014, Krawitt started work at Apple as an independent contractor for Infosys. *Id.* He allegedly warned Infosys that the two Infosys trainers lacked the necessary H1-B visas to conduct the training courses. *Id.* Krawitt also claims that an Apple senior manager was aware that the two trainers were on B-1 visas. *Id.* On September 15, 2014, Krawitt drafted a project memorandum for the Agile Contract, which was later presented to Apple's managers. *Id.* at ¶ 16. The project memorandum contained information about the qualifications of the trainers, "thereby further informing [Apple executives] . . . that Infosys intended on bringing Indian foreign nationals . . . on B-1 visas as trainers/instructors under the Agile Contract." *Id.* at ¶ 16.

On September 24, 2014, at the request of Infosys employees, Apple provided Infosys with

---

[1] This is not the first time Infosys has been accused of violating immigration laws. On October 30, 2013, Infosys settled a case with the United States in which the government accused Infosys of, among other things, sending foreign nationals to work in the United States on B-1 visas to avoid having to apply for H1-B visas. *Id.* at ¶ 6. H1-B visas are subject to a numerical cap, as opposed to the unlimited number of B-1 visas that can be granted. *Id.* That case was before the United States District Court for the Eastern District of Texas. *Id.* at ¶ 7.

2
Case No. 16-CV-04141-LHK
ORDER GRANTING APPLE INC.'S MOTION TO DISMISS AND DENYING INFOSYS TECHNOLOGIES, LTD.'S MOTION TO DISMISS AS MOOT

draft letters to the two trainers to enter the United States. *Id.* at ¶ 17. These letters did not mention that the trainers would conduct training sessions under the Agile Contract. *Id.* Rather, the letters stated that the 2 trainers would attend meetings at Apple and would not be paid. *Id.* The Defendants allegedly hid the fact that the two trainers were paid "in the form of continued salary benefits." *Id.* The draft letters were circulated and then finalized on Apple letterhead. *Id.* Although the FAC claimed that the letters "contained false statements and material omissions," the FAC does not specify whether the letters were ever shown to any government officials.

When Krawitt learned about the letters, he notified his immediate supervisor at Infosys on September 25, 2014 about the visa issue. *Id.* at ¶ 18. Around October 6, 2014, Krawitt notified another Infosys employee, Razab Chowdhury, that Infosys was violating immigration laws, and that the matter should be referred to Infosys' legal department for investigation. *Id.* The only action Chowdhury took was to warn other Infosys executives that Krawitt had raised the visa issue and that it could be a problem. *Id.* Krawitt also continued to write about the visa issue in project status updates reviewed by Apple and Infosys employees. *Id.*

On October 8, 2014, an Infosys employee emailed other Infosys executives that the two trainers "needed to travel back to India, and then return to the United States in order to avoid detection and suspicion for violating United States immigration laws." *Id.* at ¶ 19. One day later, Krawitt and Chowdhury discussed the prior Eastern District of Texas case against Infosys. *Id.* Chowdhury stated that if he "got caught" for manipulating visa applications, he would "pretend as if he knew nothing." *Id.* at ¶ 20. On the same day, Krawitt allegedly spoke with an Infosys executive "who confirmed Relator Krawitt's suspicions about Infosys's immigration visa violations." *Id.* at ¶ 21.

The Agile Contract training sessions proceeded with the two Indian foreign nationals as trainers, but on October 16, 2014, one of Apple's managers told Infosys he was unhappy with the training sessions. *Id.* at ¶ 23. Infosys thereby sent the 2 Indian trainers back to India, and the remainder of the classes under the Agile Contract was cancelled. *Id.* Apple, wishing to continue

3

Case No. 16-CV-04141-LHK
ORDER GRANTING APPLE INC.'S MOTION TO DISMISS AND DENYING INFOSYS TECHNOLOGIES, LTD.'S MOTION TO DISMISS AS MOOT

1  with further training, subsequently entered into another agreement with Infosys wherein a United States-based trainer was to deliver the remaining training sessions. *Id.* at ¶ 25. Krawitt accuses Apple and Infosys employees of intentionally omitting "training" from this subsequent agreement's terms. *Id.* at ¶ 26.

Around January 2015, Krawitt's employment at Infosys was not extended, allegedly as retaliation for whistleblowing on the B-1 visa issue. *Id.* at ¶ 26. In February 2015, Krawitt then began new employment at Apple as a contractor supervised by managers who were part of the Retail Online Store Engineering Management Team. *Id.* at ¶ 20. In October 2015, Krawitt's work as a contractor was not renewed. On information and belief, Krawitt alleges that Apple conducted an internal investigation into the misuse of B-1 visas, violations which took place under the guidance of one of Apple's manager who eventually quit. *Id.* at ¶ 32.

### B. Procedural History

Krawitt's first complaint against Defendants was filed on July 22, 2016. ECF No. 1. On September 26, 2017, the government declined to intervene in the case. ECF No. 13. The First Amended Complaint ("FAC") was filed on April 16, 2018. ECF No. 37. The government has not intervened after the FAC was filed. The first complaint and the FAC contain only one cause of action: a violation of the False Claims Act ("FCA"). *See* ECF No. 1 at § VI; FAC at ¶¶ 56-59.

The Court entered a case management order on June 21, 2018. ECF No. 61. Infosys and Apple filed their motions to dismiss on June 15, 2018. ECF Nos. 55, 56 (respectively, "Apple Mot." and "Infosys Mot."). On August 10, 2018, Krawitt filed two oppositions in response to the motions to dismiss. ECF Nos. 68, 69 (respectively, "Apple Opp." and "Infosys Opp."). Apple's and Infosys' reply briefs were filed on September 21, 2018. ECF Nos. 73, 74 (respectively, "Apple Reply" and "Infosys Reply").

In Infosys' motion to dismiss, Infosys joined Apple's motion to dismiss. ECF No. 56 at 1. However, in Infosys' reply in support of its motion to dismiss, Infosys stated that it joined only parts I and III of Apple's reply in support of Apple's motion to dismiss. ECF 74 at 2. Infosys also

4
Case No. 16-CV-04141-LHK
ORDER GRANTING APPLE INC.'S MOTION TO DISMISS AND DENYING INFOSYS TECHNOLOGIES, LTD.'S MOTION TO DISMISS AS MOOT

1  stated that it did not join part II of Apple's reply because Infosys believed Krawitt never plead

2  scienter as to Infosys. *Id.*

## II. LEGAL STANDARD

### A. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The U.S. Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

5

## B. Motion to Dismiss Under Federal Rule of Civil Procedure 9(b)

Claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). Under the federal rules, a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy this standard, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). The plaintiff must also plead facts explaining why the statement was false when it was made. *See In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1549 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.,* 927 F. Supp. 1297 (C.D. Cal. 1996).

"When an entire complaint … is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint … ." *Vess*, 317 F.3d at 1107. The Ninth Circuit has recognized that "it is established law in this and other circuits that such dismissals are appropriate," even though "there is no explicit basis in the text of the federal rules for the dismissal of a complaint for failure to satisfy 9(b)." *Id.* A motion to dismiss a complaint "under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Id.*

## C. Leave to Amend

If the Court determines that a complaint should be dismissed, it must then decide whether

to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III. DISCUSSION

Infosys and Apple have different rationales for why the FAC should be dismissed. For the reasons set forth below, the Court grants Apple's motion, which Infosys joined, then denies Infosys' motion as moot.

### A. Apple's Motion to Dismiss

Apple raises multiple arguments as to why Krawitt's FAC should be dismissed. First, Apple argues that providing training sessions to Apple falls within the ambit of allowed business-related activities under a B-1 visa. Second, Apple contends that Krawitt fails to meet his Fed. R. Civ. Pro. 9(b) obligations to plead with particularity regarding how Infosys and Apple knowingly entered a scheme to evade visa requirements. Third, Apple maintains that Krawitt failed to allege that Infosys and Apple had a duty to pay the government for the more expensive H-1B visas. Fourth, Apple claims that the FAC failed to meet the FCA's materiality requirement. Lastly, Apple argues that Krawitt fails to establish a FCA claim specifically against Apple because Apple did not apply for the two trainers' visas. The Court will only address the first two of Apple's arguments, as they are dispositive of the case against *both* Apple and Infosys.

7

### 1. Permissible Activities under a B-1 Visa

First, the two trainers acted within the scope of their B-1 visas in providing training sessions to Apple. A foreign national is eligible for a B-1 visa for business if he or she (1) intends to leave the United States at the end of their stay, (2) can enter a foreign country at the end of the stay, and (3) has adequate financial arrangements . . . to carry out his or her activities and then depart the United States. 22 C.F.R. § 41.31(a). None of the above factors are in dispute here except for the definition of what constitutes a visitor for business. According to federal regulations, "[t]he term business . . . refers to conventions, conferences, consultations and other legitimate activities of a commercial or professional nature. It does not include local employment or labor for hire." *Id.* § 41.31(b). The Board of Immigration Appeals ("BIA") has established a three-prong test for what constitutes business qualifying for a B-1 visa:

> (1) [T]he alien clearly intends to maintain a foreign residence and domicile; (2) the principal place of business and the place where the profit predominantly accrues is in a foreign country; and (3) each business entry is clearly temporary in character, even if the nature of the business activity itself is not temporary and may be long continued.

2 Immigration Law & Procedure § 14.05 (2018) (citing *Matter of G-P-*, 4 I. & N. Dec. 217, 221-22 (B.I.A. Central Office 1950); *Matter of Hira*, 11 I. & N. Dec. 824 (B.I.A. 1966)).

Here, Apple asserts that a B-1 visa-holder is permitted to conduct training sessions. Apple Mot. at 11. On the other hand, Krawitt notes that Apple "knowingly paid Infosys $50,000 pursuant to a contract for training to be performed in the U.S. under a B-1 visa by non-immigrant foreigners." Apple Opp. at 8. Krawitt believes this is a "clear violation" of the law because the profit (i.e., the two trainers' paychecks) is primary accruing in the United States because they are indirectly being paid by Apple to provide the training. *Id.* at 8.

The Court disagrees with Krawitt's position. Admittedly, the law on the definition of "business" is rather ambiguous. *See, e.g.*, 2 Immigration Law & Procedure § 14.05 (2018) ("What is wanting, is a consistent reading of the B-1 provision . . . [,] one that preserves an appropriate tension between the bar to ordinary labor and the requirements of international business."); 9

8

Case No. 16-CV-04141-LHK
ORDER GRANTING APPLE INC.'S MOTION TO DISMISS AND DENYING INFOSYS TECHNOLOGIES, LTD.'S MOTION TO DISMISS AS MOOT

Foreign Affairs Manual ("FAM") 402.2-5(A)(b) ("It can be difficult to distinguish between appropriate B1 business activities, and activities that constitute skilled or unskilled labor in the United States that are not appropriate on B status."). The FAM praises *Matter of Hira* as still providing "[t]he clearest legal definition" of what constitutes business activity. *Id.*[2] Apple prevails here because under the BIA's three-prong test, the principal place of business of the trainers and Infosys is India, where profits accrue.

Krawitt does not dispute that the two trainers intended to maintain their residence in India, and that their entry into the United States was temporary in nature. These are the BIA's first and third prongs of its test of what constitutes legitimate business activity under a B-1 visa. Thus, the Court turns to the second prong: where the principal place of business is, and where the profit predominantly accrues. The Court finds that the principal place of business and where profit predominately accrues is India, which satisfies the second prong.

This case can be closely analogized to *Hira*. In *Hira*, a Hong Kong suit manufacturer sent Hira to the United States to take customers' measurements for suits to be made in Hong Kong. 11 I. & N. Dec. 824, 825 (B.I.A. 1966). Payment for the suits was remitted to the Hong Kong manufacturer, which then paid Hira in Hong Kong. *Id.* Likewise, the principal place of business of both Infosys, which is based in Bangalore, India, and the two trainers, who are based in India, is overseas. FAC at ¶ 35. Though Apple did pay Infosys $50,000 under the Agile Contract for the training sessions, this money did not go directly to the two trainers. The money went to Infosys. *Id.* at ¶ 17. Plaintiffs concede that the two trainers in the instant case were compensated "in the form of *continued* salary benefits," meaning they were paid in India. FAC at ¶ 17 (emphasis added). Thus, Infosys' and the trainers' profits accrue overseas. This satisfies the BIA test's second prong.

Krawitt attempts to distinguish *Hira* on three grounds. First, Krawitt maintains that *Hira* is

---

[2] Although it is an older case, the Department of Justice and the INS have referred to *Matter of Hira* to define the scope of allowed business activities under a B-1 visa. *See* 58 Fed. Reg. 58982, 58983 (Nov. 5, 1993).

9
Case No. 16-CV-04141-LHK
ORDER GRANTING APPLE INC.'S MOTION TO DISMISS AND DENYING INFOSYS TECHNOLOGIES, LTD.'S MOTION TO DISMISS AS MOOT

distinguishable and that a Northern District of California district court had previously rejected *Hira*'s reasoning in *Int'l Union of Bricklayers & Allied Craftsmen v. Meese*, 616 F. Supp. 1387, 1402-03 (N.D. Cal. 1985). Second, Krawitt alleges that Apple's position violates the legislative intent of the Immigration and Nationality Act ("INA"). Third, Krawitt does not believe that *Hira* applies because *Hira* was clearly an example of work in the United States that was incidental to work performed overseas. The Court rejects each of these arguments in turn.

First, *Bricklayers*, which did not reject *Hira*'s reasoning, is factually distinguishable. Rather, it actually supports Apple's argument. *Bricklayers* concerns an Immigration and Naturalization Service ("INS") Operations Instruction allowing foreigners to come "to install, service, or repair commercial or industrial equipment or machinery purchased from a company outside the U.S. or to train U.S. workers to perform such service." *Bricklayers*, 616 F. Supp. at 1391 (quoting INS Operating Instruction 214.2(b)(5)). The district court struck down the Operations Instruction for violating the INA. *Id.* at 1399. The INS subsequently amended its regulations to bar B-1 visas to those coming to perform building or construction work themselves, but to allow B-1 visas to "those coming solely for the purpose of supervising and training others" in construction work. 51 Fed. Reg. 44266, 44266 (Dec. 9, 1986). The *Bricklayers* Operations Instruction and the fact that the district court found that the Operations Instruction violated the text of the INA are mostly not relevant to the instant case because the Operations Instruction dealt specifically with the construction industry. Nonetheless, *Bricklayers* supports Apple's argument because it highlights the fact that the INS amended its regulations to permit aliens to enter the United States on a B-1 visa "*for the purpose of supervising or training of others . . . .*" 8 C.F.R. § 214.2(b)(5) (emphasis added). This is an explicit acknowledgement in the federal INA regulations that training can be a legitimate business activity conducted pursuant to a B-1 visa, albeit in the construction context.[3]

---

[3] The State Department explicitly acknowledges that a "[l]ecturer or speaker" can enter the country on a B-1 visa. *See* United States Department of State, *Business Travel to the United States* at 2 (Mar. 2014), available at

10
Case No. 16-CV-04141-LHK
ORDER GRANTING APPLE INC.'S MOTION TO DISMISS AND DENYING INFOSYS TECHNOLOGIES, LTD.'S MOTION TO DISMISS AS MOOT

Second, there is no violation of legislative intent here. Krawitt's legislative intent arguments are specifically framed in terms of the INS Operating Instruction regarding construction work and Congress' "continuing concern for the protection of American workers from unnecessary foreign competition." *Bricklayers*, 616 F. Supp. at 1401. However, the *Bricklayers* court found that only "unnecessary" foreign competition is precluded. *Id.* The INS amended the Operations Instruction after the *Bricklayers* litigation to bar B-1 visas to those coming to perform construction work themselves, but to allow B-1 visas to those coming to supervise or train others in construction work. Moreover, if Congress intended to shield all industries from foreign competition, then the B-1 visa likely would not exist. For instance, in *Matter of Cortez-Vasquez*, a Mexican national entered the United States around four times a week to clear brush from ranches to sell as firewood back in Mexico. 10 I. & N. 544, 544, 547 (B.I.A. 1964). This was held to be permissible "intercourse of a commercial nature." *Id.* Presumably, American workers could have cleared the brush too, but that was insufficient for the Board of Immigration Appeals to rule in the government's favor.

Third, the training provided meets the standard of being incident to international trade or commerce. *See Hira*, 11 I. & N. Dec. at 830 (holding that employment of the foreign national should be incident to international trade or commerce). Krawitt admits that the Agile Contract between Apple and Infosys totaled more than $100 million in 2014. FAC at ¶ 14. Thus, the $50,000 allotted to provide training is incident to the total commerce between Apple and Infosys because the $50,000 training pales in comparison to the magnitude of the entirety of the Agile Contract. Krawitt neglects to consider the *total* degree of the commerce between Apple and Infosys to contextualize the services rendered by the trainers.

In sum, the Court holds that the two trainers provided permissible work under a B-1 visa.

**2. Scienter**

---

https://travel.state.gov/content/dam/visas/BusinessVisa%20Purpose%20Listings%20March%202014%20flier.pdf.

11
Case No. 16-CV-04141-LHK
ORDER GRANTING APPLE INC.'S MOTION TO DISMISS AND DENYING INFOSYS TECHNOLOGIES, LTD.'S MOTION TO DISMISS AS MOOT

Second, assuming *arguendo* that the trainers were incorrectly admitted into the United States on B-1 visas, Apple and Infosys do not have the requisite scienter to be charged with a violation of the FCA. The FCA requires that a defendant have "actual knowledge" of a false claim or acted with "deliberate ignorance" or "reckless disregard." 31 U.S.C. § 3729(b)(1). The FCA's scienter requirement is "rigorous." *United States. v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1176 (9th Cir. 2016). "[I]nnocent mistakes, mere negligent misrepresentations and *differences in interpretations* are not sufficient for False Claims Act liability to attach." *United States ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006) (emphasis added) (internal quotation marks omitted). A good-faith interpretation of a regulation does not meet the FCA's scienter requirement. *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 464 (9th Cir. 1999). "[E]stablishing even the loosest standard of knowledge, i.e., acting in reckless disregard of the truth or falsity of the information is difficult when falsity turns on a disputed interpretive question." *United States ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 288 (D.C. Cir. 2015) (internal quotation marks omitted).

Apple argues that "[t]he ambiguity here is beyond dispute," Apple Mot. at 14. Apple states that for Apple and Infosys to be liable under the FCA, "Krawitt would have to point to authoritative guidance resolving that ambiguity to put Infosys and Apple on notice that it was unreasonable to allow the Infosys employees to perform training sessions [on B-1 visas] . . . ." *Id.* at 15. On the other hand, Krawitt asserts Infosys and Apple *knew* it was illegal for the trainers to enter the United States on B-1 visas, or were *willfully blind* to that possibility. Apple Opp. at 11-12.

As discussed above, the allowable business activities under a B-1 visa are not well-defined. *See, e.g.*, *Hira*, 11 I. & N. Dec. at 827 ("Considerable difficulty has been experienced in the past in arriving at a clear and workable definition of 'business' . . . .); 9 FAM 402.2-5(A)(b) ("It can be difficult to distinguish between appropriate B1 business activities, and activities that constitute skilled or unskilled labor in the United States that are not appropriate on B status."). Thus, there is

12

ambiguity in the allowable uses of B-1 visas arising out of differences in interpretation of the relevant immigration laws and regulations.[4] The ambiguity here is in Apple's and Infosys' favor. Apple and Infosys cannot be charged with knowledge or willful blindness to the correct uses of the B-1 visa because there is simply no exhaustive list or case law of all permissible activities under a B-1 visa. *See* 22 C.F.R. § 41.31(b)(1) ("The term 'business' . . . refers to conventions conferences, consultations *and other legitimate activities of a commercial or professional nature*" (emphasis added).). Moreover, there is no case law or regulatory guidance stating that providing training is *impermissible* under a B-1 visa.

Furthermore, all Krawitt alleges about scienter is that he notified his superiors at Infosys and managers at Apple of the purported illegality of using B-1 visas to bring the trainers into the United States. *See* FAC at ¶ 15 ("[B]oth Infosys and Apple knew that these actions violated applicable laws" after Krawitt warned them about using trainers on B-1 visas). Again, it is not clear from the text of the regulation that providing training is not a legitimate commercial or professional activity under a B-1 visa. As discussed above, providing training and supervision in the construction industry is allowable under a B-1 visa. There is no indication in the regulations that providing training in other industries is disallowed. Thus, Krawitt's allegation that he notified Infosys and Apple of the trainers' use of B-1 visas does not show that Infosys or Apple knew or were willfully blind to the alleged illegality of hiring B-1 visa holders to provide the training.

In sum, because of the vagueness of the regulations governing B-1 visas, Apple and Infosys did not have the requisite scienter to commit fraud under the FCA.

**B. Infosys' Motion to Dismiss**

Apple's motion to dismiss is dispositive of the FCA claim against both Apple and Infosys. Accordingly, the Court need not reach Infosys' motion to dismiss, which the Court denies as

---

[4] Infosys' previous settlement with the United States implicated foreign nationals entering the United States on B-1 visas to code and program. *United States v. Infosys Ltd.*, No. 13-cv-00634-RAS-DDB, ECF No. 1, at ¶ 9 (E.D. Tex. Oct. 30, 2013). Thus, this is distinguishable from providing training sessions in the United States.

13
Case No. 16-CV-04141-LHK
ORDER GRANTING APPLE INC.'S MOTION TO DISMISS AND DENYING INFOSYS TECHNOLOGIES, LTD.'S MOTION TO DISMISS AS MOOT

moot.

## C. Leave to Amend

The Court does not find that amendment would be futile because Krawitt may allege additional facts to state a FCA claim against Apple and Infosys. The Court also does not find that Apple and Infosys would be unduly prejudiced by such amendment. This case is in its initial stages, so amendment would not cause undue delay. Moreover, Krawitt has not acted in bad faith. Accordingly, leave to amend is granted. *Leadsinger*, 512 F.3d at 532.

## IV. CONCLUSION

For the foregoing reasons, Apple's motion to dismiss is GRANTED with leave to amend. Infosys' motion to dismiss is DENIED as moot.

Should Plaintiff elect to amend the FAC to cure the deficiencies identified herein, Plaintiff shall do so within 30 days. Failure to amend within 30 days or failure to cure the deficiencies identified in this Order will result in dismissal with prejudice. Plaintiff may not add new causes of actions or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: October 16, 2018

*Lucy H. Koh*
LUCY H. KOH
United States District Judge